UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| ROY THEODORE REYNOLDS, | ) | |
| | ) | |
| Petitioner, | ) | 1:10-cv-297/1:08-cr-66-01 |
| | ) | |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM**

This matter comes before the Court on the motion of *pro se* petitioner[1] Roy Theodore Reynolds ("Reynolds" or "Petitioner") to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Court File 45, Petition). Pursuant to the Court's Order, the United States filed a response to Petitioner's motion (Court File No. 55, Government's Response) in which the Government opposed Petitioner's § 2255 motion.

The underlying criminal case in this Court is *United States of America v. Roy Theodore Reynolds*, Criminal Docket No. 1:08-cr-66, filed on May 5, 2008. The motions, together with the files and record in this case, conclusively show Petitioner is entitled to no relief under 28 U.S.C. § 2255. For the following reasons, the Court has determined an evidentiary hearing is unnecessary, *see United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993), and Petitioner's § 2255 motion[2]

---

[1] Technically, a party bringing a motion under 28 U.S.C. § 2255 is a moving party rather than a petitioner for writ of habeas corpus. *See, e.g., United States v. Sanders*, 3 F. Supp. 2d 554, 556–58 (M.D. Pa. 1998) (discussing similarities and differences between habeas corpus petitions under 28 U.S.C. § 2241 and 2254, and motions under 28 U.S.C. § 2255).

[2] In accordance with Rule 4 of the Rules Governing Section 2255 Proceedings, the Court has considered all of the pleadings and filings in Petitioner's § 2255 motion filed herein, and all the files, records, transcripts, and correspondence relating to Reynolds' conviction in Criminal Docket No.

will be **DENIED** for lack of merit (Court File No. 45).


I.      **STANDARD OF REVIEW**

Section 2255 of Title 28, United States Code, provides that a prisoner in custody under sentence of a federal court may move the court which imposed the sentence to vacate, correct, or set aside a sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the Petition. *See Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States*, 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000); *United States v. Abbott*, 975 F. Supp. 703, 705 (E.D. Pa. 1997).

Where a constitutional error is alleged, in order to obtain relief under § 2255, the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637–38, 113 S. Ct. 1710, 1721–22, 123 L. Ed.2d 353 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). To merit relief pursuant to 28 U.S.C. § 2255, a petitioner must demonstrate: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallet v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). "To prevail

---

1:08-cr-66, which will be cited by the Court File Number assigned to the particular pleading or motion (e.g., "Court File No. 45, Petition").

under 28 U.S.C. § 2255, a defendant must show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994) (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).  After his conviction and sentence are final, "a prisoner must clear a significantly higher hurdle than would exist on direct appeal" to obtain relief. *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)).

## II.     FACTUAL BACKGROUND

Petitioner Roy Theodore Reynolds was indicted by a grand jury sitting in the Eastern District of Tennessee in a nine count indictment for knowingly receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2) (Court File No. 1, Indictment).  The indictment was returned on May 28, 2008.  Petitioner had his initial appearance and arraignment on June 3, 2008, before United States Magistrate Judge William B. Mitchell Carter.  At that hearing he was appointed Mary Ellen Coleman, an attorney with the Federal Defender Services, to represent him.  Magistrate Judge William B. Mitchell Carter ordered Petitioner detained pending trial because the crime involved a violation of the federal child pornography laws and the Magistrate Judge deemed Petitioner a serious risk to endanger others (Court File No. 6, Detention Order).

On May 26, 2009, Petitioner filed a *pro se* motion to appoint new counsel (Court File No. 23).  Magistrate Judge Susan K. Lee held a hearing on June 5, 2009, and relieved Ms. Coleman as Petitioner's counsel (Court File No. 26).  Magistrate Judge Lee appointed Attorney Clay Whittaker as replacement counsel (Court File No. 27).

## A.    Plea Agreement

On August 19, 2008, Petitioner and the Government filed with the Court their plea agreement (Court File No. 12, Plea Agreement).  Pursuant to the agreement, Petitioner agreed to plead guilty to Count Nine of the indictment.  The agreement stated the maximum punishment faced by Petitioner for this offense (*id.* at ¶ 1).  The second paragraph of the agreement provided that the Court may impose any lawful term of imprisonment up to the statutory maximum (*id.* at ¶ 2).  The agreement contained a statement Petitioner had read the indictment, discussed the charges and any possible defenses with his counsel, and understood the crimes charged (*id.* at ¶ 3).  This same paragraph stated that Petitioner "is pleading guilty because [he] is in fact guilty."  The paragraph concluded with a delineation of the essential elements of the offense:

> In order to be guilty, the defendant agrees that each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> a) that he received child pornography;
>
> b) which depicts actual minors engaged in sexually explicit conduct;
>
> c) that he was aware of the sexually explicit nature and character of the materials and that visual depictions are of minors engaged in sexually explicit conduct; and
>
> d) that the images had been transported in interstate or foreign commerce.

(*id.* at ¶ 3)

The factual basis for the guilty plea to Count Nine was contained in Paragraph 4 of the agreement.  It states in full:

> On November 11, 2007, the Chattanooga Police Department (CPD) executed a search warrant at Reynolds' residence. The search was in response to information obtained by the CPD that Reynolds' computer contained child pornography. Reynolds was interviewed by an agent from the Federal Bureau of Identification[sic] about the possibility of child pornography being on Reynolds' computer. Reynolds stated "I guess so" when asked if there was child pornography on his computer. He

indicated there was possibly five or six child pornography videos on one of the hard drives which had been found in his residence. He stated the child pornography had been downloaded when he used the peer to peer software Limewire to download pornography videos.

On November 15, 2007, Reynolds telephoned the FBI agent and stated he wanted to cooperate fully with the investigation, and consented to allowing a forensic examination on his computer. Reynolds stated the child pornography was on the hard drive labeled "B&B." There was a folder on the hard drive labeled "B&B," and on the folder were files labeled "Betty" and "Babette." Reynolds stated the child pornography was contained in those two files. He thought there was possibly twenty to thirty videos depicting child pornography on that hard drive.

A forensic examination was conducted on the external hard drives and the Apple laptop computer seized from Reynolds. There was one hard drive marked "B+B." The hard drive contained two volumes labeled "betty" and "babette."

Thirty-six videos containing child pornography (cp) were found on volume "betty." All but a few of the videos were of prepubescent children and involved adults having sexual contact with children. The videos found on volume "betty" were downloaded from the Internet and created to the hard drive on the following dates with the following file names:

| DATE | FILE NAME |
|---|---|
| Oct. 08, 2004 | Is- (Teenfuns) Nansy 001 |
| Feb. 19, 2005 | Is - video angelsaLs-magazine |
| Feb. 22, 2005 | Is- Ls- magazine (lsm01-03-02) |
| Feb.24, 2005 | Is - LS - magazine (lsm11-08-02) |
| Mar. 08, 2005 | Is - mylola Pthc Raygold |
| Apr. 01, 2005 | Raygold Baby T 3yo girl cats cum |
| Jun.04, 2007 | (pthc) 9 yo vicky stripping & sucking |
| Jun. 11, 2007 | 2 yo ass fuck she cries for mommy pthc pedo |
| Jun.23, 2007 | Baby j very willing little girls |

The last video's receipt over the Internet is that charged in Count 9.

The volume labeled "babette" contained one video which depicted cp. The video was identical to the video on volume "betty" created on June 23, 2007. Folder QKX2 contained 71 images and one video depicting cp which were removed from an Apple PowerBook G4 laptop. The 71 images are of three different underage girls in various poses. All of these images were created to the laptop on October 14, 2004. The video on the laptop was identical to the video on volume "betty" created on June 11, 2007.

All of the above-described images traveled over the Internet in interstate commerce in reaching Mr. Reynolds' computer.[3]

(*id.* at ¶ 4).

This factual basis stated that Petitioner, in response to a question from a Federal Bureau of Investigation Special Agent regarding child pornography being on his computer, responded "I guess so." Petitioner told the agent there were possibly five or six child pornography videos on one of his hard drives. He informed the agent the child pornography had been downloaded using peer to peer software. In a later conversation Petitioner told the agent the child pornography was on a specific hard drive labeled "B & B." Petitioner identified the specific folders on this hard drive with the files containing child pornography. Last, he told the agent there were possibly twenty to thirty videos depicting child pornography on the hard drive. A forensic examination of the hard drive revealed thirty-six videos of child pornography. There were also 71 images of child pornography on the hard drive.

In paragraph 5 of the agreement, it states that Petitioner understands that by pleading guilty he is giving up seven specified rights, including the right to plead not guilty, the right to a trial, the right to the presumption of innocence, the right to have the Government prove his guilt beyond a reasonable doubt, and the right to testify on his own behalf, to present evidence on his behalf, and to compel the attendance of witnesses to testify in his defense (Court File No. 12, Plea Agreement, ¶ 5).

---

[3] The parties also filed an amended agreed factual basis with the Court (Court File No. 14). The amended agreed factual basis was nearly identical to the original factual basis with the exception of the italicized text below added to the final paragraph -- "All of the above-described images*, which are identified by knowledgeable law enforcement authorities as depicting real children,* traveled over the Internet in interstate commerce in reaching Mr. Reynolds' computer" (Court File No. 14 at 2) (italicization added).

Paragraph 6 of the agreement provides that the Government will not oppose the reduction under the United States Sentencing Guidelines ("USSG") § 3E1.1 for acceptance of responsibility (*id.* at ¶ 6). Paragraphs 8 and 9 of the agreement state that a Presentence Investigation Report ("PSR") will be submitted by the Probation Office and that Petitioner may be under the supervision of the Probation Office.

**B.    Guilty Plea**

On September 11, 2008, Petitioner appeared before the undersigned where he pleaded guilty to Count Nine of the indictment (Court File No. 15). The Court followed the requirements of Fed. R. Crim. P. 11. Petitioner was sworn at the beginning of the guilty plea hearing (Court File No. 52 at 2, Plea Hearing Transcript). Petitioner acknowledged that he had an obligation to answer the Court's questions truthfully and that if he gave false answers he could be prosecuted for perjury. He stated that he had attended college but did not graduate. He informed the Court he had never been treated for any mental illness and was not under the influence of drugs, legal or illegal (*id.* at 2). He swore he had enough time to discuss his case with his attorney and was satisfied with his attorney's representation (*id.* at 3). He was advised by the Court he would be giving up certain constitutional rights if he pleaded guilty, among them the right to plead not guilty and persist in his earlier not guilty plea; the right to a trial by jury; the presumption of innocence; the assistance of counsel at a trial; the right to confront and cross-examine witnesses against him; the right not to be compelled to incriminate himself; the right to require the United States to prove him guilty beyond a reasonable doubt; the right to issue subpoenas to compel the attendance of witnesses to testify in his behalf (*id.* at 4). Petitioner swore under oath that he understood that by pleading guilty he would be giving up all of those rights (*id.*). He swore that he understood that if he pleaded guilty there

would not be a trial of any kind (*id.*). And he swore that no one had threatened him or anyone else or forced him in any way to get him to plead guilty (*id.*).

After Petitioner had assured the Court of his understanding of the above matters, the Court asked Petitioner whether the Plea Agreement (Court File No. 12) was his plea agreement with the Government. Petitioner assured the Court that it was (Court File No. 52 at 5). Petitioner acknowledged that the Plea Agreement contained all of the understandings he had with the Government (*id.*).

Then the Court had Count Nine of the indictment read and Petitioner was asked how he would plead to that Count (*id.* at 6,7). Petitioner answered "Guilty." The Court then explained the essential elements of the offense (*id.* at 7). Petitioner swore he understood the elements and to what he was pleading guilty (*id.* at 8). The Court directed Petitioner's attention to the factual basis contained in paragraph 4 of the Plea Agreement. Petitioner affirmed he had read that paragraph and that what was contained in the factual basis was true and correct, but that the date of November 11 should have been October 11. Then the Court asked Petitioner whether he was offering to plead guilty because he was in fact guilty (Court File No. 52 at 11). Petitioner in response to that question answered in the affirmative (*id.*).

Based upon Petitioner's sworn answer to the Court, the Court accepted Petitioner's guilty plea and set the case for sentencing (*id.* at 12). The Court ordered that a PSR be prepared on Petitioner.

### C. Change of Counsel

Following Petitioner's guilty plea, his counsel, Ms. Coleman, filed a Sentencing Memorandum on his behalf advocating for a non-Guidelines sentence (Court File No. 19). This

Sentencing Memorandum traced the development of the child pornography Guidelines and argued they were entitled to less deference than other Guidelines. Ms. Coleman also sought and received two continuances of the sentencing hearing so that she could explore and discuss with Petitioner sentencing issues (Court File Nos. 16, 20).

On May 26, 2009, the Court received a handwritten letter from Petitioner requesting that Ms. Coleman be relieved from representing Petitioner (Court File No. 23). In the letter he alleged he was dissatisfied with Ms. Coleman's performance. He stated she had failed to provide a reasonable amount of time and attention to his case and what she had provided had been unproductive. He alluded to some information he discovered on his own that he believed to be relevant and that called into question the validity of his plea agreement. He requested another attorney be assigned to represent him.

On June 1, 2009, Ms. Coleman filed a motion on Petitioner's behalf requesting that he be allowed to withdraw from his guilty plea (Court File No. 22). She recounted his background and related he had a history of mental health issues dating back to 2001. According to the motion:

> Mr. Reynolds has taken some time to study cases which he believes relate to his charges. While undertaking this endeavor, he believes his understanding has grown and that it was a hasty mistake to plead guilty to receipt of child pornography. It has taken to this point in the case for him to research and study issues relating to his charges. Mr. Reynolds admits that his thought process was not as clear when he was first incarcerated due to prescription medications. Currently, Mr. Reynolds believes he sees things in a clearer way and that he should not have pled guilty.

(*id*).

Ms. Coleman concluded the motion by stating Petitioner desired to withdraw his plea and proceed to trial.

On June 3, 2009, Magistrate Judge Susan K. Lee held a hearing on Petitioner's motion to

appoint new counsel (Court File No. 26).  Magistrate Judge Lee granted Petitioner's motion and on

June 5, 2009, relieved Ms. Coleman from further legal representation of Petitioner and appointed

Clayton M. Whittaker in her stead (Court File No. 27).  Mr. Whittaker moved for and was granted

the appointment of a psychiatric/psychological expert to assist him in his representation of Petitioner

(Court File No. 30).  On August 25, 2009, Magistrate Judge Lee granted Petitioner's "Motion to

Strike Motion to Withdraw Guilty Plea" (Court File No. 34).  Mr. Whittaker subsequently filed a

motion for downward departure (Court File No. 38).

### D.    Petitioner's Sentencing

Petitioner's sentencing hearing was held on October 22, 2009 (Court File No. 42).  At the

beginning of the hearing the Court asked Petitioner whether he had received a copy of the PSR.

(Court File No. 53, Sentencing Transcript).  He informed the Court he had read the report.  He stated

he had reasonable time to discuss the case with his counsel, Clay Whittaker (*id*.).  When the Court

asked whether he desired more time Petitioner said he did not (*id*. at 3).  The Court referenced

material it had received, among them a letter from Petitioner.  In the letter Petitioner mentioned a

January 2009 public statement that he hoped the Court had read.  The Court informed the parties the

Court had not received the statement and that if Petitioner wanted the Court to read it, then it would

have to be submitted to the Court (*id*. at 4).  Counsel stated that after discussing the matter with

Petitioner, they would not submit the statement ("It actually was a submission to a local newspaper.

. . . It's *Enigma*, Your Honor.") (*id*. at 4-5).

The Court brought to Petitioner's attention a sentence from the letter Petitioner submitted

to the Court: "I believe the percentages themselves show my lack of intent" (*id*.).  The Court then

referred the parties to the next paragraph of the letter where Petitioner stated he had discussions with

the Special Agent of the FBI where he denied intent of any involvement with the acquisition of child pornography (*id*. at 5,6). The Court then stated:

> When I took his guilty plea, one of the things I told him that was involved in this crime was, he had to knowingly receive child pornography. It's my understanding of the law that someone who inadvertently or unknowingly received child pornography is not guilty of a crime. So if he came across the child pornography inadvertently and without knowledge, it would not be a crime. Is he telling me, then, that he's not guilty of this offense?

(Court File No. 53 at 6).

After counsel mentioned that Petitioner did not intend to deny his guilt or withdraw his guilty plea, the Court spoke directly to Petitioner and engaged in the following lengthy discussion directly with Petitioner:

> THE COURT: Mr. Reynolds, this Court is not in the practice of sentencing innocent people. And if someone has any doubts at all about whether they're guilty of an offense or not, my advice is to assert that belief and let the case go to trial. I asked you at the time I took your guilty plea if you were in fact guilty. I asked you that under oath. I will ask you the question again. Are you in fact guilty of this offense?
>
> (Off-the-record discussion.)
>
> THE DEFENDANT: I agree, yes, yes, Your Honor, that I am guilty of this offense.
>
> THE COURT: And that means that you did receive child pornography?
>
> THE DEFENDANT: Yes, sir, I did download child pornography.
>
> THE COURT: And at the time that you downloaded the child pornography, you knew that it was depictions of minors engaged in sexual activity?
>
> (Off-the-record discussion.)
>
> THE COURT: Mr. Reynolds, you might feel better just going to trial and letting the government put on their evidence. I see you're having a great deal of difficulty coming to grips with the requirements of the law with respect to entering a guilty plea and maintaining your guilty plea. One of the benefits that society derives from someone pleading guilty is that they have acknowledged their wrongdoing, they are willing to accept the consequences of their wrongdoing and get on with their life. People who don't believe they've done

anything wrong, who go off to jail, are very, very bitter. And you are already suffering from depression. And I think adding to that the sense that you are being done wrong by serving a prison sentence for something you don't think you did would just aggravate that and make your mental problem even worse. The decision is yours. As I said, I'm not in the habit of sentencing innocent people. So if you cannot, to yourself, come to grips, or if you actually believe that you did not do anything wrong, then you should just go ahead and say so and let the government take you to trial.

(Off-the-record discussion.)

THE DEFENDANT: I apologize, Your Honor, for taking so much of the Court's time.

THE COURT: This is a very important day and issue for you. So don't feel bad about the time. It's very, very important that you, yourself, you know, come to grips with where you are. It's more important to you than anyone else. This is something you have to live with for the rest of your life. And it's important that, whatever decision you make, you are comfortable with the decision. As I said, if you don't believe that you're guilty, then you should not plead guilty, even if you know that the government can convict you and even if you believe that you may get a harsher punishment, you still should plead not guilty, and let the case go to trial. I'm not trying to talk you out of it, but I can see that you're having a great deal of difficulty admitting the essence of what this offense is.

(Off-the-record discussion.)

 MR. WHITTAKER: Your Honor, may we have some additional time on this matter? Mr. Reynolds and I have repeatedly gone over the facts of the case, and Mr. Reynolds obviously is having some difficulty with this issue. I don't want the pressure of the situation to be the cause of him making a decision. I want him to make the decision because he wants to make this decision, as Your Honor has counseled him. And that's-- I would ask the Court for a continuance if it's possible.

THE COURT: Mr. Humble?

 MR. HUMBLE: Your Honor, we oppose a continuance. He's in custody. We need to get this matter over with. And he should just go on and go to trial if he's got this much of a problem. Let's just go to trial.

THE DEFENDANT: Your Honor, I am -- I am guilty of having child pornography. My difficulty, my mental –

 MR. WHITTAKER: Stop.

THE COURT: Mr. Reynolds, it is not a crime to have child pornography. It is a crime to knowingly possess child pornography. If someone walks out of the courtroom and someone

slipped some child pornography in their purse, that person has not committed a crime at all. If someone is downloading something on the computer and someone sneaks something in a file and it just shows up on your computer, that is not a crime. So when you tell me that you had child pornography on your computer, that doesn't say anything at all. We went through this -- I'm not sure when your guilty plea was, but some months ago. I know we've continued your sentencing. And at that time I would have asked you under oath a number of questions. I would have gone through the elements of the offense, and the elements of the offense would have included intent and knowledge. I would have asked you if you had had time to talk about your guilty plea with your attorney. I would have asked you if you were pleading guilty because you were in fact guilty. And you would have answered all those questions in the affirmative or I would not have taken your guilty plea. So I don't know if something has changed in your life since then, or if you think that you were not being honest with me at the time, or what, but I think more than enough time has gone by for you to know whether in your mind or not you think you're guilty. And I think I've been pretty clear on this. If you don't think that you're guilty, you should not have entered a guilty plea, the case should go to trial.

MR. WHITTAKER: Your Honor, if I can have just one moment with Mr. Reynolds, we may be able to solve this.

THE COURT: Yes, you may.

(Off-the-record discussion.)

THE DEFENDANT: Your Honor, I accept my guilty plea.

(Off-the-record discussion.)

THE COURT: Now, do you recall, Mr. Reynolds, at the time that you entered your guilty plea, that I explained to you the elements of the crime? Do you remember that?

THE DEFENDANT: Yes, sir.

THE COURT: And one of the elements of the crime was that you had to know that the material that you had constituted depictions of children involved in sexual acts. Remember me saying that?

THE DEFENDANT: Not specifically, but I-- Sure.

THE COURT: And do you recall telling -- do you recall answering my question "Do you understand what you're pleading guilty to?" your telling me yes?

THE DEFENDANT: Yes, sir.

THE COURT: Do you recall that I had the factual basis -- it may have been included in your plea agreement, but I asked you if what was in the factual basis was true and correct?

THE DEFENDANT: Yes, sir.

THE COURT: And do you recall telling me that what was in the factual basis was in fact true and correct?

THE DEFENDANT: Yes, sir.

THE COURT: And do you recall me asking you, "Are you offering to plead guilty because you are in fact guilty?" Do you recall me asking you that?

THE DEFENDANT: Yes, sir.

THE COURT: And do you recall telling me yes, that you were in fact guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Would you change any of the answers to those questions today?

THE DEFENDANT: No, sir.

THE COURT: So you're telling me again that you are in fact guilty of this crime?

THE DEFENDANT: Yes, sir.

THE COURT: And that means you knowingly received child pornography?

THE DEFENDANT: Yes, sir.

THE COURT: And that means that you knowingly possessed child pornography?

THE DEFENDANT: Yes, sir.

Based upon Petitioner's statements, the Court went ahead with the hearing. In his statement to the Court, Petitioner stated this was an aberration of character (Court File No. 53 at 45). He said this was a lapse of judgment, he did not look for child pornography and in fact it does not interest him. He described the turmoil in his life at the time. He explained his involvement in volunteer and charitable activities. He stated he had lost a lot and he acknowledged that many people have been

hurt by child pornography (*id.* at 46). However, he denied that he had been a part of any of the harm (*id.* ). After hearing from his counsel and the Government's counsel, the Court imposed a sentence of 110 months incarceration (*id.* at 51). The Court advised Petitioner of his right to appeal the sentence and that the Court would appoint counsel for him for his appeal if he could not afford counsel (*id.* at 56).

Petitioner did not file an appeal from the Court's sentence.

## III.    PETITIONER'S CLAIMS

In his motion Petitioner lists four claims: (1) "Ineffective Assistance of Counsel for inducing defendant to agree to a plea over the defendant's substantive, relevant objection"; (2) "Ineffective Assistance of Counsel for inaccurately presenting to defendant the plea agreement proposed by prosecutor as a no alternative sentence"; (3) "Counsel was deficient by failing to inform defendant of his rights with regard to the PSR, and by failing to challenge or amend the PSR when defendant request that she do so"; and (4) "Counsel was deficient by failing to present Aberrant Behavior arguments and data to support a downward departure motion" (Court File No. 45).

He has also claimed that no direct appeal was filed against his request. He raised a number of other issues but they all relate to the performance of his counsel, either Ms. Coleman or Mr. Whittaker. Although there are a number of claims, the Court can categorize them as relating to representation regarding his guilty plea and representation regarding the sentencing.

## IV.    ANALYSIS

### A.    *Strickland* Standard

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690; *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S. Ct. 2574, 91 L. Ed.2d 305 (1986).

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had

no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

### B. Representation Regarding Guilty Plea

Many of Petitioner's claims relate to his representation by Ms. Coleman prior to his plea of guilty before this Court. He claims he was induced to plead guilty by Ms. Coleman over his objections. He claims he always denied downloading the child pornography intentionally. He also claims he was not advised by his counsel that by pleading guilty he would be giving up certain constitutional rights. These claims are contradicted by Petitioner's own sworn testimony to the Court and the record. In the guilty plea colloquy the Court specifically asked Petitioner whether anyone had forced him in any way to plead guilty (Court File No. 52 at 4). He testified no one had (*id*). From the record it is apparent Petitioner was a very difficult client and it is unlikely his attorneys or anyone else could have induced him to do anything he did not wish to do. The rights Petitioner claims he was not informed he would be giving up by pleading guilty were listed in the

Plea Agreement in paragraph 5 (Court File No. 12). By signing the Plea Agreement Petitioner stated he "understands that by pleading guilty [he] is giving up several [listed] rights" (Court File No. 52 at 3,4). The date beside his signature on the Plea Agreement is August 15, 2008 (Court File No. 12). His guilty plea hearing did not take place until September 11, 2008, almost a full month later. This was more than enough time for Petitioner to digest the importance of what he was doing. Then at his guilty plea hearing the Court itself advised Petitioner of the constitutional rights he would be giving up by pleading guilty (Court File No. 12 at 3,4).

Petitioner after being placed under oath made solemn sworn statements to the Court. The Court relied upon those sworn statements to accept Petitioner's guilty plea. The law is clear that sworn representations such as those given by Petitioner at his guilty plea hearing "carry a strong presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Even if the Court accepted Petitioner's doubtful claims he was not advised by Ms. Coleman of the rights he would be giving up, the fact that those rights were listed in the Plea Agreement he signed and were listed by the Court at his guilty plea hearing would remedy any failure on the part of Ms. Coleman. The Court explained the elements of the offense to Petitioner and he testified he understood what it was to which he was pleading guilty (Court File No. 52 at 7). Those elements were also contained in his Plea Agreement (Court File No. 12). Any claim by Petitioner at this date in light of the contents of his Plea Agreement, the Court's advisements at his guilty plea hearing and Petitioner's sworn statements there, that he did not know he was pleading guilty to receiving child pornography and that he was misled, are not worthy of belief. His guilty plea was a knowing, voluntary and intelligent plea. Additionally, his knowing, voluntary and intelligent guilty plea waives any claim based on

non-jurisdictional errors occurring prior to the plea. *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). In *Tollett*, the Supreme Court held that a knowing, voluntary and intelligent plea of guilty generally bars habeas review of claims relating to the deprivation of constitutional rights that occurred before the defendant pleaded guilty. The Supreme Court stated, "[t]he focus of federal habeas inquiry is the nature of [defense counsel's] advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." *Id.* at 266–67. Here, Petitioner's claims as related to ineffective assistance of counsel prior to guilty plea are "palpably incredible" and "patently frivolous or false."

Petitioner has failed to carry his burden on claims relating to ineffective assistance of counsel regarding advice leading to his guilty plea. Accordingly, his claims will be denied.

### C. Representation Regarding Sentencing

The remaining claims relate to Petitioner's sentencing, either the contents of his PSR or arguments made or not made at his sentencing hearing. He claims Ms. Coleman and Mr. Whittaker were deficient by failing to inform him of his rights regarding the PSR and by failing to challenge the PSR. He claims Mr. Whittaker was deficient to argue that Petitioner's actions constituted aberrant behavior and warranted a downward departure.

At the conclusion of Petitioner's guilty plea hearing, the Court stated it would have the Probation Office prepare the PSR. This belies Petitioner's contention he thought the PSR was prepared by the prosecution. Ordinarily Probation Officers seek to have a personal interview with defendants. Such an effort should have disabused Petitioner of his false notion that the PSR was prepared by the prosecution. Also, the Court informed Petitioner during the guilty plea hearing that he had the right to challenge the PSR (Court File No. 52 at 9). Moreover, at the sentencing hearing

the Court specifically asked Petitioner whether he had enough time to discuss the PSR with counsel (Court File No. 53 at 2). The Court also inquired as to whether there were any objections to the PSR. Only after Petitioner assured the Court he had both read the PSR and had adequate time to discuss it with his counsel did the Court continue with the sentencing hearing. The Court was aware that Petitioner was a mature, experienced man with some college education. Mr. Whittaker advocated ably on Petitioner's behalf. The Court would not have permitted subpoenaing of the Probation Officer or the presentation of witnesses unless there was a factual challenge to the calculation of the Guidelines and such evidence would have been necessary for the Court to determine that challenge. Fed. R. Crim. P. 32(i). Petitioner's claim therefore that counsel was derelict in not "subpoenaing the Probation Officer, presenting evidence, witnesses, document, etc." is incorrect. The Court would not have allowed any of this unless it was necessary for the Court's factual determination of a contested issue necessary for the calculation of the Guidelines.

During the sentencing hearing the Court detected some resistance on the part of Petitioner. The Court then engaged in a lengthy discussion with Petitioner regarding whether he desired to withdraw his plea of guilty and proceed to trial (Court File No. 53 at 6,7). The Court discussed with Petitioner the elements of the offense and the ramifications of his guilty plea (*id*. at 11-12). The Court even indicated if Petitioner had any reservations at all about proceeding, he should withdraw his guilty plea and go to trial (*id*. at 6).

To the extent Petitioner faults counsel for his Guidelines calculation, he fails to allege a claim that is cognizable under § 2255. "In federal sentencing cases, federal law authorizes an imprisonment range. While the sentencing guidelines are used as a starting point for determining where within the statutorily-set range a prisoner's sentence should fall, the guidelines themselves

are advisory. *Gibbs v. United* States, 655 F.3d 473, 479 (6th Cir. 2011) (citing *United States v. Booker*, 543 U.S. 220, 246, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005); *United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005)). A challenge to the sentencing court's guidelines calculation, therefore, only challenges the legal process used to sentence a defendant and does not raise an argument that the defendant is ineligible for the sentence she received." *Gibbs*, 655 F.3d at 479. An error in the Guidelines calculation is not one that entitles a person to relief under 28 U.S.C. § 2255, where a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallet v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

Even had Petitioner raised a proper claim here, he would not be entitled to relief because Congress in the PROTECT ACT, Prosecutorial Remedies and Other Tools to End Exploitation of Children Today Act of 2003, Pub. L. No. 108–066, 117 Stat. 650 (2003), prohibited defendants convicted of an offense of sexual exploitation of a minor under Chapter 110 of Title 18, from receiving a departure based upon aberrant behavior, USSG § 5K2.20.

Just as with Petitioner's claims regarding his guilty plea, the Court concludes Petitioner's claims of ineffective assistance of counsel at his sentencing hearing are "palpably incredible" and "patently frivolous or false."

Petitioner has failed to carry his burden on claims relating to ineffective assistance of counsel regarding his sentencing. Accordingly, his claims will be **DENIED**.

### D.     Petitioner's Claims Counsel Failed to file an Appeal on his Behalf

Petitioner with respect to each of his four grounds states "[d]irect appeal was not filed against

defendant's request." However, this was never stated as a separate ground. In his continuation page he does state counsel was deficient by failing to file a direct appeal as directed by Petitioner (Court File No. 45 at 19). Petitioner bears the burden of proof that he did direct counsel to file an appeal. As an attachment to his motion, Petitioner includes a letter dated August 16, 2010, some nine months after his sentencing, written to Mr. Whittaker (Court File No. 54). Petitioner was told at his sentencing hearing that a notice of appeal must be filed within fourteen days (Court File No. 53 at 56). In the letter Petitioner discusses that other inmates have attorneys filing appeals on those other inmates' behalf based on new rulings by judges and appeals courts. He says he has not heard from Mr. Whittaker "since the day of my sentencing, when I asked if you would continue to represent me through the appeals process, and you assured me that you would." Petitioner specifically references § 2255 and says there are arguments and precedents he believes could have his sentence vacated. He concludes by saying he is rapidly running out of time to file.

Nowhere in this letter does Petitioner say he directed Mr. Whittaker to file a direct appeal on his behalf. He never asked the status of an appeal nor why Mr. Whittaker had not filed an appeal as directed. The best reading of the letter is that Petitioner wishes Mr. Whitaker to file a § 2255 on his behalf.

Petitioner also includes as an attachment a letter from Mr. Whittaker dated August 31, 2010, in reply to Petitioner's letter (Court File No. 54). In Mr. Whittaker's letter he mentions he had previously recommended Petitioner file a § 2255 motion (*id.*). Mr. Whittaker disputes the notion Petitioner asked him to file a direct appeal (*id*). He says "[o]ur recollections differ about your request for a direct appeal," and "[m]y recollection is that I explained to you that you received a guidelines sentence and that a sentence in that range is presumed reasonable and that therefore an

appeal was very unlikely to be successful and based on your response no appeal was filed. I continue to believe that such is the correct legal position in your case" (*id.*).

In light of this communication between Petitioner and Mr. Whittaker, exchanged before the § 2255 motion was filed, the Court concludes Petitioner has not carried his burden of establishing that he did direct Mr. Whittaker to file a direct appeal on his behalf.

According, the Court will **DENY** Petitioner's request on this ground.[4]

## V. CONCLUSION

The facts of this case demonstrate absolutely no deficiencies on the part of either defense counsel. Petitioner's contentions as to the deficiencies are contradicted by his sworn testimony and the record. Thus Petitioner cannot meet the first part of the *Strickland* test. Accordingly, the motion for relief under Title 28, United States Code, Section 2255 should be **DENIED** (Court File No. 45).

In addition to the above, this Court **CERTIFIES** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, any application by Petitioner for leave

---

[4] In a final attempt to establish his § 2255 claims, Petitioner filed a "Motion to Append Relevant Findings to 2255 Filing" (Court File No. 60). In the motion, Petitioner contends the Court should consider *United States v. Daniel Szymanski*, 631 F.3d 794 (6th Cir. 2011) because the case is both relevant and timely with respect to Petitioner's ineffective assistance of counsel claims. While the Court will **GRANT** Petitioner's motion (Court File No. 60) and allow him to append this additional filing to his motion, the Court concludes this case his no bearing on the instant matter. In *Szymanski*, the Sixth Circuit determined on direct appeal that the defendant's guilty plea was not valid because the district court failed to properly inform the defendant of the nature of the child pornography charge--particularly the scienter or knowledge requirement--before the defendant entered a guilty plea. Here, however, as the Court has emphasized throughout this memorandum, Petitioner was informed of the nature of the child pornography offense in the plea agreement, at his guilty plea hearing, and at sentencing. Even after being made aware of all the elements of the offense, Petitioner chose to enter a guilty plea and admitted guilt to the offense. Accordingly, even if *Szymanski* was relevant to the instant case, it would have no effect on this Court's decision.

to proceed *in forma pauperis* on appeal is **DENIED**. Fed. R. App. P. 24. Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253; Fed. R. App. P. 22(b), or reasonable jurists would disagree on the resolution of this matter, thus a certificate of appealability **SHALL NOT ISSUE**. *Slack v. McDaniel*, 529 U.S. 473, 484–85, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000).

An Order shall enter.

**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**